STEWART v. SEGAL ET AL.

(March 10, 1930.   Opinion and Decree.)
(April 7, 1930.   Rehearing Refused.)
(June 2, 1930.   Writ of Certiorari and Review Refused by Supreme Court.)

Spearing & Mabry and Wm. H. McClendon, Jr., of New Orleans, attorneys for plaintiff, appellee.

Woodville & Woodville, of New Orleans, attorneys for defendant, appellant.

Louis E. Jung, of New Orleans, attorney for plaintiff, appellee.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. This matter, presenting only a question of law, was submitted on an agreed statement of fact. We know of no better way to state the facts than to set forth in full the stipulation agreed to by the parties:

"It is agreed by and between Louis E. Jung, attorney for Samuel B. Stewart, and Lemle, Moreno & Lemle, attorneys for Federal Surety Company, that this case shall be submitted on the following statement of facts, which are agreed to by and between the said attorneys:

"On or about May 3rd, 1928, Federal Surety Company became the surety on a certain building contract bond for Twelve Thousand ($12,000.00) Dollars, whereon Bernard Segal, the contractor, was principal, running to Mrs. Etta Greenwald, covering the construction work about to be undertaken in the premises 2834-36 Napoleon Avenue.

"On or about the 9th day of May, 1928, Samuel B. Stewart entered into a written contract with Bernard Segal for the sale and installation of two (2) No. 5 D Estate Heatrolas for the price and sum of One Hundred Seventy ($170.00) Dollars, the said Bernard Segal being at that time and subsequently engaged as contractor for the construction and/or erection of the building known as 2834-36 Napoleon Avenue, bounded by Willow, Clara and Jena Streets, the said building belonging to Mrs. Etta Greenwald, which said contract stipulated that the amount thereof, $170.00, should be paid Samuel Stewart ten days after the installation of said heatrolas, and that interest at the rate of eight (8%) per cent would be charged from maturity of said contract, until paid, together with twenty (20%) per cent attorney's fees additionally, all as will more fully appear by reference to said contract, annexed to plaintiff's petition and marked Exhibit 'P-1.'

"On or about September 5th, 1928, the said heatrolas were installed in the premises 2834-36 Napoleon Avenue then being constructed and/or erected by the said Bernard Segal.

"That the said heatrolas were not paid for within ten days after their installation and have not yet been paid for, notwithstanding amicable demand on the said Bernard Segal.

"That Samuel B. Stewart executed an attested account before Joseph Rosenburg, Notary Public, on the 14th day of February, 1929, recorded a copy thereof in the Mortgage Office for the Parish of Orleans

in Book 78, Folio 304, and served a copy thereof on the Federal Surety Company.

"The Federal Surety Company offered to pay to Samuel B. Stewart the sum of One Hundred Seventy ($170.00) Dollars, the amount of the labor and material furnished in the building, 2834-36 Napoleon Avenue, together with One and 50/100 ($1.50) Dollars, the cost of recording the lien of the said Samuel B. Stewart in the Mortgage Office for the Parish of Orleans, and on May 4th, 1929, sent to Louis E. Jung, attorney for Samuel B. Stewart, its check for $170.00, and the check of Lemle, Moreno & Lemle for $1.50, together with a document to secure the cancellation of the lien recorded by Samuel B. Stewart in the Mortgage Office for the Parish of Orleans in Book 78, Folio 304, but the said two checks were returned to Lemle, Moreno & Lemle, attorneys for Federal Surety Company, with the advice that Mr. Stewart would not accept less than the amount that his contract called for, which included interest at 8%, running from a period of ten days after the installation of the heatrolas, and 20% attorney's fees, which amount the Federal Surety Company has refused to pay.

"The issue presented to the court for determination is whether or not the Federal Surety Company is obligated to pay and the plaintiff herein, S. B. Stewart, is entitled to collect from Federal Surety Company the said 8% interest and 20% attorney's fees."

The obligation of the surety on a building contractor's bond is to pay all subcontractors, laborers, and furnishers of material and supplies necessarily called for by the contract.

The two heaters were called for by the building contract, and of course there can be no question as to the liability of the surety therefor, and this liability has been admitted, and there has been deposited in the registry of the court a sum sufficient to discharge this obligation.

But is the surety liable for such unusual, incidental obligations as the principal may have been willing to assume, if those incidental obligations are neither specified in the main contract nor customary in the furnishing of material and supplies?

We do not find that the attorney's fees on subcontracts are specified in the main contract, nor do we believe that it is customary, in the furnishing of material such as heaters, to require that a 20 per cent attorney's fee shall be paid if the main debt is not discharged in ten days.

As to the interest, we believe that it can be said to have been within the contemplation of the surety that the furnisher of supplies should be entitled to interest on his debt. Eight per cent per annum is a lawful rate of interest, and therefore it appears to us to be not unreasonable to say that the creditor was within his reasonable rights in stipulating for 8 per cent interest, instead of accepting 5 per cent, which would have been allowed in the absence of a stipulation.

But the 20 per cent attorney's fee which was stipulated for in the event of nonpayment of the debt within ten days appears to us to be unreasonable, not according to custom, and not within the contemplation of the surety. If the creditor could, by such a stipulation, made without the knowledge or consent of the surety, bind the surety, he could make any contract, no matter how unreasonable, and the surety would be bound therefor. To enforce the contract would result in the penalizing of the surety beyond the limits contemplated in the main contract.

The surety was therefore within its rights in refusing to pay the attorney's fees called for, but was not justified in refusing to pay the interest at 8 per cent.

Since the deposit made was insufficient in view of the fact that it did not include interest at 8 per cent, the surety should pay the costs of the trial court. But, since the judgment of the lower court was erroneous, in that it included attorney's fees at 20 per cent, the appellee should pay the costs of appeal.

No penalty is due under Act 225 of 1918 since the plaintiff was not willing to accept payment unless that payment included attorney's fees, and since we do not believe that the attorney's fees were due by the surety.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended so as to reduce the amount thereof to $171.50, with interest at 8 per cent per annum from September 15, 1928, subject to a credit of $171.50, costs of the city court to be paid by defendant and appellant, and costs of this court to be paid by plaintiff and appellee, and, as thus amended, the judgment is affirmed.

ON APPLICATION FOR REHEARING

PER CURIAM. The decree rendered by this court on March 10, 1930, is amended so as to read as follows:

"It is ordered, adjudged and decreed that the judgment appealed from be and it is amended so as to reduce the amount thereof to $171.50, with interest at 8 per cent per annum from September 15, 1928, to May 17, 1929, subject to a credit of $171.50, costs of the city court to be paid by defendant and appellant, and costs of this court to be paid by plaintiff and appellee, and as thus amended the judgment is affirmed."

The application for rehearing is refused.